UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

MARK HILGENBERG,

     Plaintiff

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff MARK HILGENBERG (hereinafter "Plaintiff" or "HILGENBERG") hereby sues the Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "Defendant" or "CARNIVAL") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.    **THE PLAINTIFF.**  The Plaintiff MARK HILGENBERG (hereinafter "HILGENBERG") is *sui juris* and is a citizen and resident of Deltona, Florida.

3.    **THE DEFENDANT**. The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "Defendant" or "CARNIVAL") is incorporated outside of the state of Florida in the country of Panama but does business in the State of Florida. At all times material hereto, CARNIVAL was and continues to do business in Miami Dade County,

1

Florida. At all times material hereto, CARNIVAL owned and/or operated the cruise ship on which the subject negligence occurred

4.      **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.      **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.     **DATE OF THE INCIDENT**.  The incident occurred on October 22, 2021.

8.     **LOCATION OF THE INCIDENT.**   The incident occurred onboard the vessel the *Carnival Mardi Gras*, a ship in navigable water, while the Plaintiff was a passenger onboard. Accordingly, Plaintiff's claims are governed by general maritime law.  Specifically, the Plaintiff's incident occurred on the jogging track on Deck 18 while the ship was in navigable waters.

9.     **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **CARNIVAL MARDI GRAS.** CARNIVAL owns  and/or  operates  the  *Carnival Mardi Gras.*  The *Carnival Mardi Gras* was first put into service in July of 2021. CARNIVAL has operated and maintained the ship continuously since December 2020.

11.     CARNIVAL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas on board the Carnival Mardi Gras is Deck 18, which features attractions like the Ultimate Playground (rollercoaster), WaterWorks, SportsSquare (basketball court) and an open-air jogging track. Carnival knows that deck 18 is an extremely high traffic area, and that many passengers visit the area at least once per day. The *Carnival Mardi Gras* has a capacity for 6,500 passengers and 2,000 crew members.

12.     CARNIVAL participated in, created, approved, or controlled or had the right to control the design of the structures as well as the selection of all materials on board the *Carnival Mardi Gras*. CARNIVAL custom built the *Carnival Mardi Gras* cruise ship in a shipyard in Finland. The *Carnival Mardi Gras* is a cruise ship which CARNIVAL had custom built to specifications and designs which were made by or under the supervision and participation of CARNIVAL. *Carnival Mardi Gras* was designed by or at the direction of CARNIVAL's shoreside

3

New Build and other shoreside departments. CARNIVAL employs architects, designers, and engineers. Under the contract with the shipyard, CARNIVAL has not only full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. CARNIVAL holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, CARNIVAL can withhold payment.

13.     The *Carnival Mardi Gras* is a part of the *Excellence* Class, including the sub-classes *Helios* Class and *Excel* Class which includes the *AIDAnova, Costa Smeralda, Iona, AIDAcosma, Costa Toscana, Carnival Celebration, Arvia,* and *Carnival Jubilee.* CARNIVAL also custom built to specifications and designs which were made by or under the supervision and participation of CARNIVAL all of the *Excellence* class ships, listed above. The design and construction of these ships was under the supervision and with the participation of Carnival personnel who were stationed onsite in the shipyard during construction.

14.     **THE DANGEROUS CONDITION**. Like most of CARNIVAL's ships, the *Carnival Mardi Gras* has an open-air jogging track on Deck 18. For years, CARNIVAL has chosen to install certain floor systems throughout its fleet's open decks including the jogging track, the SportsSquare (basketball court), and the WaterWorks area as well as other open deck facilities and/or amenities on its ships.  Upon information and belief, these floor systems are a synthetic material that can be made in numerous colors, designs, and made to mimic teak wood. CARNIVAL has known for years that this synthetic floor material is extremely slippery when wet regardless of where it is installed.

15.     CARNIVAL knows that its floors on the jogging track often accumulate a wet surface. CARNIVAL knows that Deck 18 is an open deck and thus exposed to the elements like

rain and wind. Also located on Deck 18 is Carnival's *Waterworks*. The jogging track circles Carnival's WaterWorks. CARNIVAL knows that passengers walking around deck 18 to use Carnival's WaterWorks will often track water throughout the deck. The floor of the jogging track is unexpectedly slippery when wet. For that reason, Carnival knows, it is extremely important to inspect and clean the floors in such a fashion as to keep the floors clean, dry, and safe for pedestrian traffic.

16.     **THE INCIDENT.** Because CARNIVAL installed dangerous flooring and allowed the flooring to remain wet and slippery, HILGENBERG slipped and fell and severely injured himself on October 22, 2021. At approximately 10:15am, HILGENBERG went to Deck 18 to ride on the Ultimate Playground (rollercoaster) for the first time. HILGENBERG was utilizing the jogging track to walk to the ride. HILGENBERG was watching where he was walking. Despite that, the slippery floor was not readily apparent. CARNIVAL failed to place warning signs in the area where the incident occurred. As HILGENBERG was walking on the jogging track, he slipped on the unreasonably dangerous area where Carnival had allowed the water to accumulate and exist for an extended period of time. As a result of CARNIVAL's negligence, HILGENBERG has suffered serious, debilitating, and permanent injuries including a broken left femur which will require surgery and a left broken kneecap. HILGENBERG suffered and will continue to suffer severe, debilitating, and permanent injuries.

17.     **NOTICE: PRIOR SIMILAR INCIDENTS**. CARNIVAL knew or should have known about the dangerous condition because of prior similar incidents. See  *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence

of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

a) Passenger Christopher Beaufils was injured when he slipped and fell on the Skycourt on the Spa WaterWorks & Sports Deck (Deck 12) on board the *Carnival Horizon* on January 4, 2019. *Christopher Beaufils v. Carnival Corporation*, Case No. 12-cv-20034. CARNIVAL owns and operates the *Carnival Horizon*. Like the *Carnival Mardi Gras*, the *Carnival Horizon* features a jogging track. The flooring of the jogging track and the basketball court (skycourt) on board the *Carnival Horizon* is the same as the flooring on the jogging track on board the *Carnival Mardi Gras*.

b) Passenger Joshua Sanford was injured when he slipped and fell on the basketball court on the sports deck (Deck 11) on board the *Carnival Valor*  on December 11, 2018. *Joshua Sanford v. Carnival Corporation*. CARNIVAL owns and operates the *Carnival Valor*. Like the *Carnival Mardi Gras*, the *Carnival Valor* also features a jogging track. The flooring of the jogging track and the basketball court on board the *Carnival Valor* is the same as the flooring on the jogging track on board the *Carnival Mardi Gras.*

c)  Passenger Sharon Denner slipped and fell in the Waterworks area (Deck 10) on board the *Carnival Sunshine* on September 21, 2014. Additionally, a minor passenger slipped and fell in the Waterworks area (Deck 10) on board the *Carnival Sunshine* on November 12, 2015. Another minor passenger slipped and fell in the Waterworks area (Deck 10) on board the *Carnival Sunshine* on November 25, 2015. CARNIVAL owns and operates the *Carnival Sunshine*. Like the *Carnival Mardi Gras*, the *Carnival Sunshine* features a jogging track. The flooring of the jogging track and the waterworks area on board the *Carnival Sunshine* is the same flooring as the jogging track on the *Carnival Mardi Gras.*

18.  **NOTICE: THE LENGTH OF TIME THE DANGEROUS CONDITION EXISTED**.  The ship went through rainy conditions during the early morning hours of October 22, 2021. By approximately 9:30am, the rain stopped.  The incident occurred at approximately 10:15am. There was at least 30-45 minutes from the time that it stopped raining to when the incident occurred. The dangerous condition also has existed since the time the subject floors were installed. *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 201 (11th Cir. 2019) (finding sufficient period of time when crewmembers continuously monitored an area that had been wet for at least twenty to twenty-five minutes); *Underwood v. NCL (Bahamas) Ltd.*, 2019 WL 2011389, at *2 (S.D. Fla. Feb. 12, 2019) (sufficient period of time when puddle existed for at least  fifteen minutes); *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1190 (S.D. Fla. 2016) (puddle that existed at least fifteen minutes sufficient for a reasonable jury to find constructive notice); *Marsh v. Celebrity Cruises, Inc.*, 2017 WL 6498107, at *3  (S.D. Fla. Dec. 13, 2017) (evidence that a liquid was present on the floor for at least  thirty minutes before plaintiff's fall sufficient for a reasonable jury to find a defendant cruise ship operator had constructive knowledge of its existence.)

19.     **NOTICE: CREW MEMBERS IN THE VICINITY.** CARNIVAL knew or should have known about the dangerous condition as there were crew members in the vicinity of the subject area. *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 203 (11th Cir. 2019) citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (Ga. 1980) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard." (quotation marks omitted)); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) ("[The] facts place the crew member in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter.  Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crew member knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it."). *Haiser v. MSC Cruises (USA) Inc.,* 2019 WL 4693200, at *5 (S.D. Fla. Aug. 9, 2019) (denying summary judgment in part where a "reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in the immediate vicinity and based on the amount of time the water was there."); *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [Defendant] exercised reasonable care under the circumstances to maintain its premises in a safe condition.")

20.     **NOTICE: ON-GOING, REPEATIVE PROBLEM.**  Additionally, CARNIVAL knew or should have known that the dangerous condition is an on-going repetitive problem. CARNIVAL's open decks often become wet from rainwater or sea water. CARNIVAL also knows that passengers walking around deck 18 to use Carnival's WaterWorks will often track water

throughout the deck.  If not monitored and maintained on a regular basis, there will be large wet areas on the decks.

21.    **NOTICE: POLICY AND PROCEDURES**. Additionally, CARNIVAL knew or should have known about the dangerous condition because the cruise line has policies and procedures applicable to the subject area that require crew members to inspect and maintain the floors in a clean and dry condition and to warn passengers about dangerous conditions.  CARNIVAL specifically trains its crew members to inspect and maintain the floor on the open deck of Deck 18 in a clean and dry condition.  CARNIVAL's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured.  CARNIVAL also trains and created procedures which require crew members to place wet floor signs on floors that become repetitively wet and/or are known to be wet.  CARNIVAL created this procedure for its crew because CARNIVAL knows that without warnings passengers may not know or be able to perceive that its floors are wet and or slippery.

22.    **NOTICE: CAUTION SIGNS.** Additionally, CARNIVAL knew or should have known about the dangerous condition because CARNIVAL posts caution signs in other areas of Deck 18. *Elizabeth Amy v. Carnival Corp.*, 961 F.3d 1303 (11th Cir. June 16, 2020); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (holding that the "presence of warning cones" near an alleged slip and fall is evidence from which "a reasonable jury could ... infer that [the defendant] was on notice of the potentially hazardous condition."); *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (holding that evidence that Carnival sometimes posted signs on a specific pool deck door that read "caution, strong winds" created "a genuine issue of fact" as to whether Carnival had actual or constructive notice of the hazardous condition); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015) (concluding that a cruise ship

operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain.)

23.     **NOTICE: VIOLATION OF INDUSTRY STANDARDS**.  Additionally, CARNIVAL knew or should have known about the dangerous condition because relevant industry standards, regulations, and codes dictate the safety standards for outdoor decks.  "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)).Such guidelines are also probative of the defendants' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-

binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

**COUNT I**
**NEGLIGENT FAILURE TO WARN**

24.     The Plaintiff, HILGENBERG, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

25.     This is an action for CARNIVAL's negligent failure to warn passengers, including HILGENBERG, of its hazards, risks or dangers on board the *Carnival Mardi Gras*.

26.     **DUTIES OWED BY CARNIVAL**.   CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including CARNIVAL. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

27.     CARNIVAL owes a duty as a common carrier to its passengers to warn of dangers known to CARNIVAL where CARNIVAL invites or reasonably expect passengers to go. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are that CARNIVAL owns and/or manages more than twenty (20) cruise ships, including the *Carnival*

*Mardi Gras*. CARNIVAL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is Deck 18, which features attractions like the Ultimate Playground (rollercoaster), WaterWorks, SportsSquare (basketball court) and an open-air jogging track. The flooring in the jogging track often accumulates water and becomes unexpectedly slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes warning of dangerous conditions on board the *Carnival Mardi Gras* including the jogging track floor where HILGENBERG fell on October 22, 2021.

28.    CARNVIAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The jogging track is an escape route that CARNIVAL knew or should have known it must maintain in a safe, clear, and secure condition.

29.    CARNIVAL knew or should have known about the dangerous condition. CARNIVAL knew or should have known about the dangerous condition of the from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Additionally, CARNIVAL knew or should have known about the dangerous condition because of the length of time the dangerous condition existed. Additionally, CARNIVAL knew or should have known about the dangerous condition because as there were crew members in the vicinity of the

subject area. Additionally, CARNIVAL knew or should have known that the dangerous condition is an on-going repetitive problem. Additionally, CARNIVAL knew or should have known about the dangerous condition because the cruise line has policies and procedures applicable to the subject area that require crew members to inspect and maintain the floors in a clean and dry condition and to warn passengers about dangerous conditions. Additionally, CARNIVAL knew or should have known about the dangerous condition because it posted warning signs in other areas of Deck 18.

30.     Further, CARNIVAL knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

31.     **CARNIVAL BREACHED ITS DUTIES.**  CARNIVAL breached its duty to warn HILGENBERG of the dangerous conditions on board the *Carnival Mardi Gras* including where HILGENBERG fell on October 22, 2021.  CARNIVAL breached its duties to the Plaintiff by its actions and conduct.  CARNIVAL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the jogging track where HILGENBERG fell on October 22, 2021. CARNIVAL's crew members failed to reasonably and regularly make audible announcements about the wet or condensed surface.

32.     **PROXIMATE CAUSE**. CARNIVAL's failure to properly warn HILGENBERG of the dangerous conditions on board the *Carnival Mardi Gras* including the jogging track where

HILGENBERG fell on October 22, 2021, proximately caused the Plaintiff's injuries. Had CARNIVAL properly warned HILGENBERG of the dangerous condition, HILGENBERG would have been aware of the dangerous condition. HILGENBERG therefore would have never fell on board the *Carnival Mardi Gras* on October 22, 2021.

33.   **DAMAGES**. CARNIVAL's negligence proximately caused permanent injuries and damages to HILGENBERG in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HILGENBERG has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, HILGENBERG demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT II**</u>
**<u>NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS</u>**

34.     The Plaintiff, HILGENBERG, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

35.     This is an action against CARNIVAL for its negligent design, construction and selection of the subject flooring.

36.     **<u>DUTIES OWED BY CARNIVAL</u>**. CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers" including HILGENBERG. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of the subject flooring on the *Carnival Mardi Gras.*

37.     CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: CARNIVAL owns  and/or operates the *Carnival Mardi Gras.* The *Carnival Mardi Gras* was first put into service in July 2021. CARNIVAL has operated and maintained the ship continuously since on or about December 2020.

38.     CARNIVAL has all of its ships including the *Carnival Mardi Gras* custom made to its own design and specifications. After CARNIVAL's designs are created, CARNIVAL approved, and/or controlled or had the right to control the construction of the structures as well as the selection of all materials on board the *Carnival Mardi Gras* including the subject flooring.

39.     The *Carnival Mardi Gras* was designed by or at the direction of CARNIVAL's shoreside New Build and other shoreside departments. CARNIVAL maintains shoreside departments that are responsible for the design, selection and construction of CARNIVAL's ships.

CARNIVAL also maintains shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when CARNIVAL refit or modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by CARNIVAL.

40.     CARNIVAL custom built the *Carnival Mardi Gras* cruise ship in a shipyard in Finland under the constant supervision of CARNIVAL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, CARNIVAL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. CARNIVAL holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, CARNIVAL can withhold payment.  That includes the materials used on all the floors or surfaces onboard the *Carnival Mardi Gras* which caused this incident and these injuries.

41.     CARNIVAL at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The jogging track is an escape route that CARNIVAL knew or should have known it must maintain in a safe, clear, and secure condition.

42.     CARNIVAL chose to create, design, and construct all of the surfaces on board the *Carnival Mardi Gras* including where HILGENBERG fell on October 22, 2021.

16

43.     CARNIVAL selected and/or approved of all materials on board the *Carnival Mardi Gras* including where HILGENBERG was injured on October 22, 2021.

44.     CARNIVAL should have known that the outdoor jogging track it chose to create, design, and construct in Deck 18 of the *Mardi Gras* would accumulate water creating an unreasonably dangerous surface.

45.     CARNIVAL knew or should have known about the dangerous condition. CARNIVAL knew or should have known about the dangerous condition of the from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Additionally, CARNIVAL knew or should have known about the dangerous condition because of the length of time the dangerous condition existed. Additionally, CARNIVAL knew or should have known about the dangerous condition because as there were crew members in the vicinity of the subject area. Additionally, CARNIVAL knew or should have known that the dangerous condition is an on-going repetitive problem. Additionally, CARNIVAL knew or should have known about the dangerous condition because the cruise line has policies and procedures applicable to the subject area that require crew members to inspect and maintain the floors in a clean and dry condition and to warn passengers about dangerous conditions. Additionally, CARNIVAL knew or should have known about the dangerous condition because it posted warning signs in other areas of Deck 18.

46.     Further, CARNIVAL knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation

of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

47.     Because CARNIVAL had the ultimate control over the design, construction and selection of materials for its ships, CARNIVAL could have refused to approve the design, construction and selection of materials used for the jogging track on board the *Carnival Mardi Gras*. Despite knowing that the floor in the jogging track was dangerous, CARNIVAL approved the installation of the flooring as CARNIVAL was and is operating the *Carnival Mardi Gras* with the subject flooring.

48.     CARNIVAL knew or should have known of the dangerousness of the floors on the jogging track on board the *Carnival Mardi Gras* since their installation in 2019.

49.     **CARNIVAL BREACHED ITS DUTIES**. CARNIVAL breached its duty of care owed to HILGENBERG and was negligent by approving, designing, constructing, and/or selecting, the floor for the jogging track on board the *Carnival Mardi Gras.* CARNIVAL failed to design, construct, select, approve and/or reject materials that complied with industry standards. The design and/or materials CARNIVAL approved or selected and used to construct the jogging track floors on Deck 18 on board the *Carnival Mardi Gras* was unreasonably dangerous. CARNIVAL could have added anti-slip strips but chose not to.

50.     **PROXIMATE CAUSE**. CARNIVAL's negligent design, construct and selection of the flooring for the jogging track on board the *Carnival Mardi Gras* proximately caused HILGENBERG's injuries.  Had CARNIVAL properly designed, constructed and selected the floor

of jogging track on board the *Carnival Mardi Gras,* HILGENBERG would never have fallen on October 22, 2021.

51.    **DAMAGES**. CARNIVAL's negligence proximately caused permanent injuries and damages to HILGENBERG in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HILGENBERG has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, HILGENBERG demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO MAINTAIN**

52.    The Plaintiff, HILGENBERG, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

53.     This is an action against CARNIVAL for its negligent failure to maintain the floor of the jogging track on board the *Carnival Mardi Gras* in a safe manner.

54.     **DUTIES OWED BY CARNIVAL**.   CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including HILGENBERG. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

55.     CARNIVAL owes a duty as a common carrier to its passengers to maintain the floor in the jogging track on board the *Carnival Mardi Gras* in a safe manner. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are that CARNIVAL owns and/or manages more than twenty (20) cruise ships, including the *Carnival Mardi Gras*. CARNIVAL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is Deck 18, which features attractions like the Ultimate Playground (rollercoaster), WaterWorks, SportsSquare (basketball court) and an open-air jogging track. The flooring in the jogging track often accumulates water and becomes unexpectedly slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes maintaining the surfaces on board the *Carnival Mardi Gras* including where HILGENBERG fell on October 22, 2021.

56.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe

condition clear of obstacles.")  The jogging track is an escape route that CARNIVAL knew or should have known it must maintain in a safe, clear, and secure condition.

57.    CARNIVAL knew or should have known about the dangerous condition. CARNIVAL knew or should have known about the dangerous condition of the from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Additionally, CARNIVAL knew or should have known about the dangerous condition because of the length of time the dangerous condition existed. Additionally, CARNIVAL knew or should have known about the dangerous condition because as there were crew members in the vicinity of the subject area. Additionally, CARNIVAL knew or should have known that the dangerous condition is an on-going repetitive problem. Additionally, CARNIVAL knew or should have known about the dangerous condition because the cruise line has policies and procedures applicable to the subject area that require crew members to inspect and maintain the floors in a clean and dry condition and to warn passengers about dangerous conditions. Additionally, CARNIVAL knew or should have known about the dangerous condition because it posted warning signs in other areas of Deck 18

58.    Further, CARNIVAL knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel</u>

Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

59.    **CARNIVAL BREACHED ITS DUTIES.**   CARNIVAL breached its duty to maintain the floor in the jogging track on board the *Carnival Mardi Gras* on October 22, 2021 in a safe manner.   CARNIVAL breached its duties to HILGENBERG by its actions and conduct. CARNIVAL failed to maintain and inspect the area where HILGENBERG slipped and fell. CARNIVAL failed to warn passengers, including HILGENBERG, of its hazards, risks or dangers.

60.    **PROXIMATE CAUSE**. CARNIVAL's failure to maintain the floor in the jogging track on board the *Carnival Mardi Gras* in a safe manner, proximately caused HILGENBERG's injuries. Had CARNIVAL properly maintained and inspected the floor in the jogging track on board the *Carnival Mardi Gras*, HILGENBERG would have never slipped and fell on *Carnival Mardi Gras* on October 22, 2021.

61.    **DAMAGES**. CARNIVAL's negligence proximately caused permanent injuries and damages to HILGENBERG in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HILGENBERG has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, HILGENBERG demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to

economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate

**COUNT IV**<br>**NEGLIGENT TRAINING OF PERSONNEL**

62.     The Plaintiff, HILGENBERG, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

63.     This is an action against CARNIVAL for its negligent training of its shipboard crewmembers.

64.     **DUTIES OWED BY CARNIVAL**.   CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including HILGENBERG. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

65.     CARNIVAL owes a duty as a common carrier to its passengers to train its crew members to properly inspect, clean, dry and warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go.  CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are that CARNIVAL owns and/or manages more than twenty

(20) cruise ships, including the *Carnival Mardi Gras*. CARNIVAL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is Deck 18, which features attractions like the Ultimate Playground (rollercoaster), WaterWorks, SportsSquare (basketball court) and an open-air jogging track. The flooring in the jogging track often accumulates water and becomes unexpectedly slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. However, Passengers are not familiar with these hazardous conditions. These unreasonably hazardous are also not readily apparent to passengers on board CARNIVAL's cruise ships. For these reasons, CARNIVAL's duty of care includes training its crew members to inspect, clean, dry and warn passengers about dangerous conditions on board the *Carnival Mardi Gras* including where HILGENBERG fell on October 22, 2021.

66.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The jogging track is an escape route that CARNIVAL knew or should have known it must maintain in a safe, clear, and secure condition.

67.     CARNIVAL knew or should have known about the dangerous condition. CARNIVAL knew or should have known about the dangerous condition of the from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

Additionally, CARNIVAL knew or should have known about the dangerous condition because of the length of time the dangerous condition existed. Additionally, CARNIVAL knew or should have known about the dangerous condition because as there were crew members in the vicinity of the subject area. Additionally, CARNIVAL knew or should have known that the dangerous condition is an on-going repetitive problem. Additionally, CARNIVAL knew or should have known about the dangerous condition because the cruise line has policies and procedures applicable to the subject area that require crew members to inspect and maintain the floors in a clean and dry condition and to warn passengers about dangerous conditions. Additionally, CARNIVAL knew or should have known about the dangerous condition because it posted warning signs in other areas of Deck 18.

68.     Further, CARNIVAL knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment. See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

69.     CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) failed to inspect and clean and dry the subject area.

70.     CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Mardi Gras* including where HILGENBERG was injured on October 22, 2021.

71.   **CARNIVAL BREACHED ITS DUTIES**. CARNIVAL breached its duty of care owed to HILGENBERG and was negligent by failing to reasonably train its crewmembers to inspect, clean, dry and warn passengers of the dangerous conditions on board the *Carnival Mardi Gras* including the subject area where HILGENBERG fell on October 22, 2021.

72.   At the time HILGENBERG, fell on the jogging track, the crewmember that was responsible for warning, cleaning, drying and inspecting that area failed to do so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like HILGENBERG, of the dangerous conditions on board the *Carnival Mardi Gras* including the subject area where HILGENBERG fell on October 22, 2021. Because that crew member was not properly trained, that crew member also failed to properly inspect, clean, and dry the area.

73.   **PROXIMATE CAUSE**. CARNIVAL's failure to properly train its crew members proximately caused HILGENBERG's injuries. Had CARNIVAL properly trained its crew members to inspect, clean, dry, and warn passengers about the dangerous conditions on board the *Carnival Mardi Gras* including subject area where HILGENBERG fell on October 22, 2021, the crewmember would have inspected, cleaned, dried, and warned HILGENBERG about the dangerous condition. If CARNIVAL had properly trained its crew members, the dangerous condition would not have existed. If CARNIVAL had properly trained its crew member HILGENBERG would have been aware of the dangerous condition.  HILGENBERG therefore would never have fell on the jogging track on October 22, 2021.

74.   **DAMAGES**. CARNIVAL's negligence proximately caused permanent injuries and damages to HILGENBERG in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the

past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HILGENBERG has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, HILGENBERG demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V
## NEGLIGENT SUPERVISION OF PERSONNEL

75.     The Plaintiff, HILGENBERG, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

76.     This is an action against CARNIVAL for its negligent supervision of its shipboard crewmembers.

77.     **DUTIES OWED BY CARNIVAL**.   CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including HILGENBERG. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a

"duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

78.     CARNIVAL owes a duty as a common carrier to its passengers to supervising its crew members to ensure that the crew members are properly inspecting, cleaning, drying and warning passengers of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go.  CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are that CARNIVAL owns and/or manages more than twenty (20) cruise ships, including the *Carnival Mardi Gras*. CARNIVAL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is Deck 18, which features attractions like the Ultimate Playground (rollercoaster), WaterWorks, SportsSquare (basketball court) and an open-air jogging track. The flooring in the jogging track often accumulates water and becomes unexpectedly slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. However, Passengers are not familiar with these hazardous conditions. These unreasonably hazardous are also not readily apparent to passengers on board CARNIVAL's cruise ships. For these reasons, CARNIVAL's duty of care includes supervising its crew members to ensure that the crew members are properly inspecting, cleaning, drying and warning passengers about dangerous conditions on board the *Carnival Mardi Gras* including where HILGENBERG fell on October 22, 2021.

79.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified

international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")   The jogging track is an escape route that CARNIVAL knew or should have known it must maintain in a safe, clear, and secure condition.

80.     CARNIVAL knew or should have known about the dangerous condition. CARNIVAL knew or should have known about the dangerous condition of the from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Additionally, CARNIVAL knew or should have known about the dangerous condition because of the length of time the dangerous condition existed. Additionally, CARNIVAL knew or should have known about the dangerous condition because as there were crew members in the vicinity of the subject area. Additionally, CARNIVAL knew or should have known that the dangerous condition is an on-going repetitive problem. Additionally, CARNIVAL knew or should have known about the dangerous condition because the cruise line has policies and procedures applicable to the subject area that require crew members to inspect and maintain the floors in a clean and dry condition and to warn passengers about dangerous conditions. Additionally, CARNIVAL knew or should have known about the dangerous condition because it posted warning signs in other areas of Deck 18.

81.     Further, CARNIVAL knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See,

*e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

82.     CARNIVAL should have become aware that it had failed to properly supervise its crew members given that the crew member(s) failed to inspect and clean and dry the subject area.

83.     CARNIVAL should have become aware that it had failed to properly supervise its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Mardi Gras* including where HILGENBERG was injured on October 22, 2021.

84.     **CARNIVAL BREACHED ITS DUTIES**. CARNIVAL breached its duty of care owed to HILGENBERG and was negligent by failing to reasonably supervise its crew members to ensure that its crew members were properly inspecting, cleaning, drying and warning passengers of the dangerous conditions on board the *Carnival Mardi Gras* including the subject area where HILGENBERG fell on October 22, 2021.

85.     At the time HILGENBERG, fell on the jogging track, the crewmember that was responsible for warning, cleaning, drying and inspecting that area failed to do so. Because that crew member was not properly supervised, that crew member failed to properly and adequately warn passengers, like HILGENBERG, of the dangerous conditions on board the *Carnival Mardi Gras* including the subject area where HILGENBERG fell on October 22, 2021. Because that crew member was not properly supervised, that crew member also failed to properly inspect, clean, and dry the area.

86.     **PROXIMATE CAUSE**. CARNIVAL's failure to properly supervise its crew members proximately caused HILGENBERG's injuries. Had CARNIVAL properly supervised its

crew members to ensure that the crew members were properly inspecting, cleaning, drying, and warning passengers about the dangerous conditions on board the *Carnival Mardi Gras* including subject area where HILGENBERG fell on October 22, 2021, the crew member would have inspected, cleaned, dried, and warned HILGENBERG about the dangerous condition. If CARNIVAL had properly supervised its crew members, the dangerous condition would not have existed. If CARNIVAL had properly supervised its crew member HILGENBERG would have been aware of the dangerous condition.  HILGENBERG therefore would never have fell on the jogging track on October 22, 2021.

87.    **DAMAGES**. CARNIVAL's negligence proximately caused permanent injuries and damages to HILGENBERG in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HILGENBERG has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, HILGENBERG demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental

anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate

Dated this 29TH day of July 2022.

Respectfully submitted,

By:    _s/ Lisa C. Goodman_____
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**LISA C. GOODMAN, ESQ.** (FBN 118698)
lgoodman@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*